## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Percy Coleman, Administrator for the Estate of Philip Coleman | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 12 cv 10061 |
| v. | ) ) | **JUDGE KENNELLY** |
| The City of Chicago, Chicago Police Lieutenants Michael Rigoli, Star No. 235, Carlos Mostek, Star No. 196, and Michael Casey, Star No. 191, Chicago Police Sergeants Sean Tully, Star No. 1090, William Meador, Star No. 1003, and Tommy Walker, Star No. 2328, and Chicago Police Officers Cordy Fouch, Star No. 19814, Mark Jones, Star No. 10390, David Montgomery, Star No. 10651, Brian Hood, Star No. 10598, Reginald T. Malone, Star No. 17484, Detention Aide Keith Kirkland, Lee Caldwell, Star No. 16925, and Charita Edwards, Star No. 10095. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | FOURTH AMENDED COMPLAINT<br><br>**JURY DEMANDED** |
| Defendants. | | |

## JURISDICTION AND VENUE

1.      This action arises under the United States Constitution and the Civil Rights Act of

1871 (42 U.S.C. Section 1983).  This court has jurisdiction under and by virtue of 28 U.S.C.

Sections 1343, 1331, and 1367.

2.      Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts

complained of arose in this district.

## PARTIES

3.      At all times herein mentioned, Plaintiff Percy Coleman was and is a citizen of the United States, and was within the jurisdiction of this court.  On March 6, 2013 Percy Coleman was appointed as the Administrator  Of  The Estate of Philip Coleman.  Percy Coleman is the father of Philip Coleman, deceased.

4.      At all times herein mentioned, Chicago Police Lieutenant Michael Rigoli, Star No. 235, ("Rigoli")was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department.  This Defendant is being sued in their individual capacity.

5.      At all times herein mentioned, Chicago Police Lieutenant Carlos Mostek, Star No. 196, ("Mostek") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department.  This Defendant is being sued in their individual capacity.

6.      At all times herein mentioned, Chicago Police Sergeant Sean Tully, Star No. 1090,("Tully") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department.  This Defendant is being sued in their individual capacity.

7.      At all times herein mentioned, Chicago Police Sergeant William Meador, Star No. 1003,("Meador") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department.  This Defendant is being sued in their individual capacity.

8.      At all times herein mentioned, Chicago Police Sergeant Tommy Walker, Star No. 2328,("Walker") was employed by the Chicago Police Department, and was acting under color

of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

9.      At all times herein mentioned, Chicago Police Officer Mark Jones, Star No. 10390,("Jones") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

10.      At all times herein mentioned, Chicago Police Officer Cordy Fouch, Star No. 19814, ("Fouch") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

11.      At all times herein mentioned, Chicago Police Officer David Montgomery, Star No. 10651,("Montgomery") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

12.      At all times herein mentioned, Chicago Police Officer Brian Hood, Star No. 10598,("Hood") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

13.      At all times herein mentioned, Chicago Police Lieutenant Michael Casey, Star No. 191,("Casey") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

14. At all times herein mentioned, Chicago Police Officer Reginald T. Malone, Star No. 17484,("Malone") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

15. At all times herein mentioned, Chicago Police Detention Aide Keith Kirkland,("Kirkland") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

16. At all times herein mentioned, Chicago Police Officer Lee Caldwell, Star No. 16952 ("Caldwell") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

17. At all times herein mentioned, Chicago Police Officer Charita Edwards, Star No. 10095 ("Edwards") was employed by the Chicago Police Department, and was acting under color of state law and as the employee, agent or representative of the Chicago Police Department. This Defendant is being sued in their individual capacity.

18. At all times herein mentioned, the City of Chicago was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the City of Chicago maintained, managed, and/or operated the Chicago Police Department.

## FACTUAL ALLEGATIONS

19. On or about December, 12, 2012, in the early evening, Philip Coleman was located at or near 12842 S. Morgan, Chicago, Illinois.

20. On that day several Chicago Police Officers seized Philip Coleman.

21.     At that time and place, several Chicago Police Officers arrived to arrest Philip Coleman for an alleged domestic battery.

22.     Philip Coleman was handcuffed and arrested.

23.     At that time and place Chicago Police Sergeant Tully, and Chicago Police Officers Caldwell and Edwards, knew that Philip Coleman was in need of treatment for both physical injuries and mental health issues.  Notwithstanding that they knew Philip Coleman was in need of such treatment from a hospital equipped to provide this treatment, Sgt. Tully and Officers Caldwell and Edwards refused to make available such treatment and/or order that other Chicago Police Officers at the scene to make medical treatment available.  Instead, Philip Coleman was transported to the Chicago Police Department Fifth District police station.

24.     While Philip Coleman was in custody of the Chicago Police Department's 5th District police station on December 12, 2012 and December 13, 2012, Lieutenants Rigoli, Mostek, and Casey, and Sergeants Meador and Walker were aware that Philip Coleman was in need of medical treatment for physical injuries and mental health issues.   Rigoli,  Mostek, Casey, Meador, and Walker, failed to make such treatment available, and refused to order any Chicago Police Officers under their supervision to make medical treatment available.

25.     While at the Fifth District police station Fouch, Jones, Meador, Walker, Malone, and Kirkland used excessive force against Philip Coleman which included the use of a taser. This use of excessive force caused Philip Coleman physical and emotional injuries.

26.     Plaintiff is informed and believes alleges thereon that on December 13, 2012, after approximately twelve (12) hours in police custody Philip Coleman was transported to Roseland Community Hospital.  While at the hospital, he was subjected to the additional use of excessive force including the use of a baton and a taser by Meador, Hood, and Montgomery.

27.     While at the hospital certain Unknown Officers who were located at the Fifth District Police Station, began a cover up of what occurred to Philip Coleman.  These defendants engaged in certain acts in furtherance of that cover up in the late morning/early afternoon of December 13, 2012, including but not limited to fabricating stories to friends and family members of Philip Coleman, to the effect that he was then okay and located at the Fifth District, when, in fact, Philip Coleman had already been injured by the acts of members of the Chicago Police Department, and had been transported to the Roseland Community Hospital that day.

28.     Philip Coleman subsequently died while at the Roseland Community Hospital on December 13, 2012.  Plaintiff is informed and believes and alleges thereon that Philip Coleman's death was caused by the acts and omissions of Tully, Rigoli, Mostek, Casey, Meador, Jones, Walker, Fouch, Montgomery, Malone, Kirkland, Hood, Caldwell, and Edwards.

29.     By reason of the above-described acts and omissions of Tully, Rigoli, Mostek, Casey, Meador, Jones, Walker, Fouch, Montgomery, Malone, Kirkland, Hood, Caldwell and Edwards,  Philip Coleman sustained injuries, including but not limited to, humiliation and indignities, and suffered great mental and emotional pain and suffering all to his damage in an amount to be ascertained.

30.     The aforementioned acts of  Tully, Rigoli, Mostek, Casey, Meador, Jones, Walker, Fouch, Montgomery, Malone, Kirkland, Hood, Caldwell, and Edwards were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for the rights of Philip Coleman and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

31.     By reason of the above-described acts and omissions of Tully, Rigoli, Mostek, Casey, Meador, Jones, Walker, Fouch, Montgomery, Malone, Kirkland, Hood, Caldwell, and

Edwards, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance in the within action so that Plaintiff might vindicate the loss and impairment of Philip Coleman's rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

**COUNT I**
**PLAINTIFF AGAINST JONES, FOUCH, WALKER, MONTGOMERY,**
**MEADOR, MALONE, KIRKLAND and HOOD FOR**
**EXCESSIVE FORCE**

32.     Plaintiff, hereby incorporates and realleges one (1) through thirty one (31) hereat as though fully set forth at this place.

33.     During and after Philip Coleman's seizure, Jones, Fouch, Walker, Montgomery, Meador, Malone, Kirkland, and Hood used excessive force against Philip Coleman's person.

34.     There was no legal cause for Jones, Fouch, Walker, Montgomery, Meador, Malone, Kirkland, and Hood to use force against Philip Coleman.

35.     By reason of Jones, Fouch, Walker, Montgomery, Meador, Malone, Kirkland, and Hood's conduct, Philip Coleman was deprived of rights, privileges and immunities secured to him by the Fourth and/or Fourteenth Amendment to the Constitution of the United States and laws enacted thereunder. The physical violence inflicted upon Philip Coleman was unnecessary, unreasonable, and excessive, and was therefore in violation of his Fourth and/or Fourteenth Amendment Rights. Therefore, defendants, and each of them, are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT II
## Plaintiff Against RIGOLI, MOSTEK, CASEY, MEADOR, and WALKER For FAILURE TO PROTECT

36.     Plaintiff hereby incorporates and realleges paragraphs one (1) through thirty one (31) hereat as though fully set forth at this place.

37.      Jones, Fouch, Montgomery, Malone, Kirkland, and Hood used excessive force against Philip Coleman.

38.     There was no legal cause for Jones, Fouch, Montgomery, Malone, Kirkland, and Hood to use force against Plaintiff.

39.     Rigoli, Mostek, Casey, Meador, and Walker, had the ability and opportunity to stop Jones, Fouch, Montgomery, Malone, Kirkland, and Hood from using excessive force against Philip Coleman but failed to do so.

40.     By reason of these acts and/or omissions by Rigoli, Mostek, Casey, Meador, and Walker,  Philip Coleman was deprived of rights, privileges and immunities secured to him by the Fourth and/or Fourteenth Amendment to the Constitution of the United States and laws enacted thereunder.

41.     The physical violence inflicted upon Plaintiff by Jones, Fouch, Montgomery, Malone, Kirkland, and Hood was unnecessary, unreasonable, and excessive, and was therefore in violation of Plaintiff's Fourth Amendment Rights. Therefore, defendants, and each of them, are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

8

**COUNT III**
**Plaintiff Against TULLY, RIGOLI, MOSTEK, CASEY, MEADOR, WALKER,**
**CALDEWLL, and EDWARDS For**
**DENIAL OF MEDICAL CARE**

42.     Plaintiff hereby incorporates and realleges paragraphs one (1) through thirty one (31) hereat as though fully set forth at this place.

43.     Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards knew of Philip Coleman's need for medical care on December 12, 2012, and/or December 13, 2012, but did not make medical treatment available to Philip Coleman despite having the authority and duty to do so. Through their actions and omissions Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards unreasonably subjected Philip Coleman to an unreasonable seizure in violation of his rights under the Fourth, and/or Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

44.     The conduct of Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards, caused Philip Coleman to experience pain, suffering, emotional distress, injury, and ultimately, death.

45.     The conduct of Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.

46.     Alternatively, Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards, were deliberately indifferent to Philip Coleman's objectively serious medical needs, and their acts were undertaken intentionally with malice, willfulness, and deliberate indifference to the rights of others.

47.     Tully, Rigoli, Mostek, Casey, Meador,Walker, Caldwell, and Edwards, and each of them, are liable to Plaintiff pursuant to 42 U.S.C. Section 1983.

9

## COUNT IV
### Plaintiff Against The City of Chicago For
### MONELL LIABILITY

48.     Plaintiff incorporates and realleges paragraphs one (1) through thirty one (31) hereat as though fully set forth at this place.

49.     The misconduct of  Chicago Police Department Lieutenants, Sergeants, Police Officers, and Detention Aides  described above was undertaken pursuant to the policy and practice of the Chicago Police Department in that as a matter of both policy and practice, the Chicago Police Department directly encourages the very type of misconduct at issue here by failing to adequately train, supervise and control it officers, such that its failure to do so manifests deliberate indifference.

50.     As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Philip Coleman.  Specifically, Chicago Police officers accused of excessive force and/or violations of civil rights can be confident that the Independent Police Review Authority will not investigate those accusations in earnest, and will refuse to recommend discipline even where the Officer has engaged in excessive force or otherwise violated the civil rights of citizens.  For example, 10 months after the death of Philip Coleman the Independent Police Review Authority still had not conducted an interview of any police personnel involved in the arrest, detention, or tasering of Philip Coleman.

51.     Even instances where civil juries have found Chicago Police Officers liable for violating the civil rights of citizens and/or for committing Illinois torts of assault, battery, false imprisonment, and/or malicious prosecution against citizens those findings are not used as a basis to discipline or even re-open investigations against Chicago Police Officers.  This failure also has the

effect of encouraging Chicago Police Officers to believe their actions will not subject them to punishment or even scrutiny.

52.     Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

53.     Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case.

54.     The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

55.     As a matter of express policy, the City of Chicago does not retain any records which are more than seven years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career.  Further, the City fails to use even the records that are retained to identify and respond to patterns of misconduct by its officers.

56.     As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint.  In other words, if a police officer is accused of the same kind of misconduct multiple times within the seven year retention period, IPRA will not consider those allegations if they are deemed unsustained.

57.    The City of Chicago has failed to adequately train its police officers regarding the proper response to arrestees that are exhibiting an obvious need for medical care to treat physical injuries and/or mental illness.  This failure included a failure to train police officers in the proper use of tasers against arrestees exhibiting obvious signs of mental illness.  As a result of this failure to train, Lieutenants, Sergeants, and Police Officers chose not to transport Philip Coleman to a medical provider to treat his physical injuries and altered mental state, and instead chose to improperly use tasers against Philip Coleman on multiple occasions despite the known danger of using tasers against persons with an altered mental state.  These decisions were made despite the fact that members of Philip Coleman's family advised Chicago Police Department personnel that Philip Coleman needed treatment for his mental health at the time of his arrest.  These decisions were made despite the belief by members of the Chicago Police Department that Philip Coleman was suffering from mental illness.  These acts and omissions were done with deliberate indifference to Philip Coleman's constitutional rights.

58.    As a result of the excessive use of force, the unjustified denial of medical care, and the City of Chicago's policies and practices, Philip Coleman experienced physical injuries, conscious pain and suffering, and emotional distress, and the Estate of Philip Coleman has incurred medical and funeral expenses.

59.    Plaintiff alleges that these customs, policies and training deficiencies, described above, were the moving force behind the violations of the Philp Coleman's rights.  Based upon the principles set forth in Monell v. New York City Department of Social Services, the City of Chicago is liable for all the harm done to Philip Coleman as set forth above.

**COUNT V**
**PLAINTIFF AGAINST TULLY, RIGOLI, MOSTEK, CASEY, MEADOR,**
**WALKER AND CITY OF CHICAGO FOR WRONGFUL DEATH – WILLFUL**
**AND WANTON DENIAL OF MEDICAL CARE**

60.     Plaintiff incorporates and realleges paragraphs one (1) through thirty one (31) hereat as though fully set forth at this place.

61.     The acts and omissions of Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards, were willful and wanton in that they demonstrated an utter indifference to the safety of others.  Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards knew that harm would result from their acts and omissions, and they recklessly disregarded the consequences of those acts and omissions.  They did so by ignoring Philip Coleman's need for medical care.

62.     As a direct result of the willful and wanton conduct of Tully, Rigoli, Mostek, Casey, Meador,Walker, Caldwell, and Edwards  Philip Coleman suffered injuries including death.

63.     The City of Chicago is liable to plaintiff for the acts of Tully, Rigoli, Mostek, Casey, Meador, Walker,  Caldwell, and Edwards pursuant to the doctrine of *respondeat superior.*

64.     Percy Coleman, on behalf of the next-of-kin (including himself), claims damages for the wrongful death of Philip Coleman, and for their loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, as well as for their mental anguish caused by this loss, as well as for funeral and other expenses and damages pursuant to 740 ILCS § 180/1, commonly referred to as the Illinois Wrongful Death Act.

13

## COUNT VI
## PLAINTIFF AGAINST TULLY, RIGOLI, MOSTEK, CASEY, MEADOR, WALKER, AND CITY OF CHICAGO FOR WILLFUL AND WANTON DENIAL OF MEDICAL CARE SURVIVAL ACTION

65.     Plaintiff incorporates and realleges paragraphs one (1) through thirty one (31) hereat as though fully set forth at this place.

66.     The acts and omissions of Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards were willful and wanton in that they demonstrated an utter indifference to the safety of others.  Tully, Rigoli, Mostek, Casey, Meador, Walke, Caldwell, and Edwards knew that harm would result from their acts and omissions, and they recklessly disregarded the consequences of those acts and omissions.  The misconduct of Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards was undertaken with intentional disregard of Philip Coleman's rights.

67.     As a direct result of the willful and wanton conduct of Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards, Philip Coleman suffered great conscious pain and suffering prior to his death.

68.     The City of Chicago is liable to plaintiff for the acts of Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards pursuant to the doctrine of *respondeat superior.*

69.     Philip Coleman filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

70.     Percy Coleman,  in his capacity as Administrator of the Estate of Philip Coleman, claims damages for the conscious pain and suffering of Philip Coleman, pursuant to 755 ILCS § 5/27-6, commonly referred to as the Illinois Survival Act.

## COUNT VII
### PLAINTIFF AGAINST JONES, MEADOR, FOUCH, WALKER, MONTGOMERY, HOOD, MALONE, KIRKLAND, AND CITY OF CHICAGO FOR WRONGFUL DEATH – INTENTIONAL BATTERY

71.     Plaintiff incorporates and realleges paragraphs one (1) through thirty one (31) hereat as though fully set forth at this place.

72.     The acts of Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland, were willful and wanton in that they demonstrated an utter indifference to the safety of others.  Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland knew that harm would result from their acts, and they recklessly disregarded the consequences of those acts.  They did so by making offensive physical contact with Philip Coleman without his consent.

73.     Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland committed these acts intentionally, willfully, and wantonly, and with intentional disregard for Philip Coleman's rights.

74.     As a direct and proximate result of the willful and wanton conduct of Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland Philip Coleman suffered injuries including death.

75.     The City of Chicago is liable to plaintiff for the acts of Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland pursuant to the doctrine of *respondeat superior.*

76.     Percy Coleman, on behalf of the next-of-kin (including himself), claims damages for the wrongful death of Philip Coleman, and for their loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, as well as for their mental anguish caused by this loss, as well as for funeral and other expenses and

damages pursuant to 740 ILCS § 180/1, commonly referred to as the Illinois Wrongful Death
Act.

## COUNT VIII
### PLAINTIFF AGAINST JONES, MEADOR, FOUCH, WALKER, MONTGOMERY, HOOD, MALONE, KIRKLAND, AND CITY OF CHICAGO FOR INTENTIONAL BATTERY SURVIVAL ACTION

77.     Plaintiff incorporates and realleges paragraphs one (1) through thirty one (31)
hereat as though fully set forth at this place.

78.     The acts of Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and
Kirkland were willful and wanton in that they demonstrated an utter indifference to the safety of
others.  Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland knew that
harm would result from their acts, and they recklessly disregarded the consequences of those
acts.  They did so by making offensive physical contact with Philip Coleman without his
consent.

79.     Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland
committed these acts intentionally, willfully, and wantonly, and with intentional disregard for
Philip Coleman's rights.

80.     As a direct and proximate result of the willful and wanton conduct of Jones,
Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland Philip Coleman suffered
great conscious pain and suffering prior to his death.

81.     The City of Chicago is liable to plaintiff for the acts of Jones, Meador, Fouch,
Walker, Montgomery, Hood, Malone, and Kirkland pursuant to the doctrine of *respondeat
superior.*

16

82. Philip Coleman filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

83. Percy Coleman, in his capacity as Administrator of the Estate of Philip Coleman, claims damages for the conscious pain and suffering of Philip Coleman, pursuant to 755 ILCS § 5/27-6, commonly referred to as the Illinois Survival Act.

**COUNT IX**
**PLAINTIFF AGAINST TULLY, RIGOLI, MOSTECK, CASEY JONES,**
**MEADOR, FOUCH, WALKER, MONTGOMERY, HOOD, MALONE,**
**KIRKLAND, AND CITY OF CHICAGO**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**SURVIVAL ACTION**

84. Plaintiff incorporates and realleges paragraphs one (1) through thirty one (31) hereat as though fully set forth at this place.

85. In the manner described above Tully, Rigoli, Mostek, Casey, Meador, Walker, Caldwell, and Edwards, by denying Philip Coleman medical attention, engaged in extreme and outrageous conduct.

86. In the manner described above, Mosteck, Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland, by physically abusing Philip Coleman, engaged in extreme and outrageous conduct.

87. The actions of Tully, Rigoli, Mosteck, Casey, Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, and Kirkland were rooted in an abuse of power or authority, and undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

88. The actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

89.     As a direct and proximate result of the willful and wanton conduct of Tully, Rigoli, Mosteck, Casey, Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, Kirkland, Caldwell, and Edwards Philip Coleman suffered injuries including severe emotional distress, and great conscious pain and suffering prior to his death.

90.     The City of Chicago is liable to plaintiff for the acts of Tully, Rigoli, Mosteck, Casey, Jones, Meador, Fouch, Walker, Montgomery, Hood, Malone, Kirkland, Caldwell, and Edwards pursuant to the doctrine of *respondeat superior.*

91.     Philip Coleman filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

92.     Percy Coleman,  in his capacity of as Administrator of the Estate of Philip Coleman, claims damages for the conscious pain and suffering of Philip Coleman, pursuant to 755 ILCS § 5/27-6, commonly referred to as the Illinois Survival Act.

WHEREFORE, the Plaintiff, by and through his attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1.     That the Defendants be required to pay Plaintiff's general damages, including emotional distress, medical expenses, and funeral expenses in a sum to be ascertained;

2.     That the Defendants be required to pay Plaintiff's special damages;

3.     That the Defendants other than the City of Chicago be required to pay Plaintiff's attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4.     That the Defendants other than the City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5.     That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6.      That Plaintiff have such other and further relief as this Court may deem just and proper.


                                        BY:     s/Garrett Browne
                                                ED FOX & ASSOCIATES
                                                Attorneys for Plaintiff
                                                300 West Adams
                                                Suite 330
                                                Chicago, Illinois 60606
                                                (312) 345-8877
                                                efox@efox-law.com


**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

                                        BY:     s/ Garrett Browne
                                                ED FOX & ASSOCIATES
                                                Attorneys for Plaintiff
                                                300 West Adams
                                                Suite 330
                                                Chicago, Illinois 60606
                                                (312) 345-8877
                                                efox@efox-law.com