UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Percy Coleman, Administrator for Estate of Philip Coleman, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12 cv 10061 |
| | ) | |
| v. | ) ) | Judge Kennelly |
| City of Chicago, et al. | ) ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S MOTION TO DEPOSE OPPOSING COUNSEL

Defendant City of Chicago, by its attorney Stephen R. Patton, Corporation Counsel for the City of Chicago ("the City"), hereby moves this Court to allow the City to depose Garrett Browne in this matter, one of the attorneys representing Plaintiff Percy Coleman. In support, the City states as follows:

### INTRODUCTION

Although normally disfavored, depositions by one party of the other side's attorney is permissible if there are no other reasonable means to obtain relevant and significant information that the attorney possesses. Plaintiff's expert, Michael Brasfield, relied almost exclusively on an investigation undertaken by Mr. Browne into how the Chicago Police Department processes individuals with possible mental health issues. Because Mr. Brasfield was unable to, and was largely uninvolved with, Mr. Browne's interpretation of the files he selected to present to Mr. Brasfield, Mr. Browne has relevant and significant information, and a deposition is the only reasonable means to obtain that information.

### LEGAL STANDARD

Federal Rule of Civil Procedure 26 requires parties to engage in broad, open discovery, as "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). This broad discovery can, in some instances, include deposing the opposing party's trial counsel. *See* Fed.R.Civ.P. 30(a), 31(a); *see also Howard v.*

*Securitas Sec. Services, USA Inc.*, 630 F.Supp.2d 905, 910-11 (N.D.Ill. May 18, 2009). While this may be considered a disfavored measure, the Seventh Circuit has never provided blanket immunity exempting attorneys from being deposed, nor made them a privileged class. *See In re Plasma-Derivative Protein Therapies Antitrust Litigation*, 2013-2 Trade Cases O 78, 529, 2013 WL 5274296, at *2 (N.D.Ill. Sept. 18, 2013)(Keys, M.J.).

## FACTS

During this litigation, Plaintiff's attorneys and attorneys for the City stipulated that a total of 14,866 arrests was a reasonable sampling of the total number of arrests for the four years prior to Philip Coleman's death. Mr. Browne reviewed those 14,866 arrests and identified 2,462 arrestees that potentially needed medical care of "some kind." *Brasfield Expert Report* at 25 (Attached as Exhibit "A"). From those 2,462 arrestees, Mr. Browne selected and formulated the following:

      a.) A total 70 arrestees identified as "irrational" or "despondent" in lockup;

      b.) A total of 13 "irrational" or "despondent" arrestees that were given medical treatment;

      c.) A total of 363 arrestees with identified mental health issues (broadly defined);

      d.) A total of 67 arrestees with a mental health issue were provided with medical care.

*Exhibit A* at 26; *Deposition of Michael Brafield* at 56:6-11 (Attached as Exhibit "B").

When questioned on the arrest reports, Mr. Brasfield answered that he "did not personally examine each and every one of Mr. Browne's cases," *Exhibit B* at 62: 16-18, but, given the data he was provided, his opinion was that "the numbers that Chicago has for providing mental health care are abysmal." *Id.* at 63: 2-4. Importantly, Mr. Brasfield conceded that "[o]ther than the issue of Coleman specifically, the determination of the operation and behavior and practices of the Chicago Police Department and its employees in general, when it comes to mental health issues, are based on the information provided to me by Mr. Browne's research." *Exhibit B* at 65: 21-24, 66: 1-2.

When pressed on the specifics of the arrest reports, Mr. Brasfield answers that "Mr. Browne will be the most appropriate person to discuss specifics of arrest reports." *Exhibit B* at

70: 12-14. Indeed, the extent of Mr. Brasfield's review of the arrest reports consisted of "randomly pull[ing] out a particular case for no particular – just randomly pick one out and see if what was there comported with what Mr. Browne had provided me in summary." *Exhibit B* at 79: 6-9. Mr. Brasfield was unable to recall the extent of this "pin the tail on the donkey" form of verification – whether it was one every thirty reports or one every hundred, although he felt it was sufficient. *Id.* at 79: 4-5, 17-22.

Further, Mr. Brasfield was unable to answer as to what constituted the "broadly defined" mental health issues and that he was "relying on Mr. Browne's report and the document in these exhibits as to how he constructed that" and that Mr. Browne would be "the best source of information" on that subject. *Exhibit B* at 80: 6-24.

Even more, Mr. Brasfield was unable to offer any real insight into the reliability of the methodology behind the data collection. Indeed, "I relied on forming my opinions based – when it comes to numbers, other than Mr. Coleman's specific example, I relied on the information provided to me by counsel in this case, by Garrett Browne." *Exhibit B* at 83: 11-14. Although Mr. Brasfield felt that the methodology Mr. Browne used was "a fair attempt to determine how often the Chicago Police Department sent people for treatment," he was unable to elaborate on his reasoning why he felt the methodology was sufficient other than he thought Mr. Browne used some "trigger words" and was able to search the reports. *Exhibit B* at 83: 15-19, 190: 17-24. And while he felt that some of the methodology required nothing more than a review of checked boxes, *id.* at 192: 6-15, he was unable to offer any further insight into how "broadly defined" the mental health selection was, other than by referring to his earlier discussion that Mr. Browne would be the best suited to answer any questions on that subject. *Id.* at 196: 14-24, 197: 1-15.

## ARGUMENT

The investigation Mr. Browne undertook and his basis for selecting particular arrest files to provide to Mr. Brasfield is nonprivileged information that is relevant and crucial to the preparation of the City's case.

Although not binding, many courts have applied the standard set forth in *Shelton v. American Motors Corp.*, 805 F.3d 1323 (8th Cir. 1986), when weighing whether to permit a party to depose the opposing party's attorney. *See, e.g. Howard*, 630 F.Supp.2d at 910; *In re Plasma*, 2013 WL 5274296, at *2; *F.D.I.C. v. Fidelity and Deposit Co. of Maryland*, 2013 WL 2421776, at *2 (S.D.Ind. June 3, 2013); *Seipler v. Cundiff*, 2011 WL 4954224, at *5 (N.D.Ill.

Oct. 18, 2011); *Vazquez v. Central States Joint Bd.*, 2009 WL 1530709, at *1-2 (N.D.Ill. June 1, 2009)(*applying Prevue Pet Products v. Avian Adventures*, 200 F.R.D. 413, 418 (N.D.Ill. 2001)); *Miyano Machinery USA, Inc. v. MiyanoHitec Machinery, Inc.*, 257 F.R.D. 456, 464 (N.D.Ill. June 6, 2008); *see also Stalling v. Union Pacific R.R.Co.,* 2004 WL 783056, at *2 (N.D.Ill. Jan. 23, 2004) (*collecting cases*). *Shelton* requires the requesting party show that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. 805 F.2d at 1327; *Miyano*, 257 F.R.D. at 464. By contrast, other courts have found that since *Shelton* is not controlling authority, the correct approach is to look to the Federal Rules of Civil Procedure. *E.g., Wilson v. O'Brien*, 2010 WL 1418401, at *2 (N.D.Ill. Apr. 6, 2011).

In any event, the deposition of Mr. Browne is permissible under either standard and the Court should grant the City's Motion to Depose Mr. Browne.

If analyzed under the *Shelton* standard, a deposition of Mr. Browne is proper to ascertain the reliability behind his methodology of the selection of the arrest reports. It was this selection that formed the basis of Mr. Brasfield's opinion relating to the numbers of arrestees with mental health issues. *Exhibit B* at 83: 11-14. Mr. Brasfield was unable to offer any insight into how these numbers were calculated or what formed the reasoning behind why certain reports were chosen.

It cannot be reasonably disputed that there is another means to obtain the information possessed by Mr. Browne. Despite numerous questions, Mr. Brasfield continually deferred to Mr. Browne and answered that Mr. Browne would be the best individual to ask about the reasoning behind the data. *Exhibit B* at 70: 12-14, 80: 6-24. As such, only Mr. Browne will be able to answer questions as to his data collection and how he defined mental health issues other than simply by "broadly defined."

Second, the information sought is not privileged. This data collection and how Mr. Browne defined "mental health" issues is not attorney-work product nor is it a communication between him and a client. Rather, it is the definition of "mental health issues" that Mr. Browne used in selecting which reports to select for his data collection and numbers computation.

Third, this information is vital to this litigation. Mr. Brasfield conceded that he based his opinion on how the Chicago Police Department treat individuals with possible mental health issues, as it relates to the relevant numbers, purely on the numbers Mr. Browne provided from his research. Any investigation conducted by Mr. Brasfield, that which he could remember, was

minimal at best. To determine whether this methodology is reliable, as required, *see* Fed.R.Civ.P. 702, *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-93 (1993), the City needs to depose Mr. Browne as to how he conducted his methodology; Mr. Brasfield was unable to provide any real insight into this essential issue. Without this information, the City would be unable to properly prepare for a motion to bar Mr. Brasfield's opinion on the subject, or even if such a motion would be appropriate. Furthermore, the City's rebuttal expert witness, Judy Roberts, should be allowed to review any information relating to how Mr. Browne chose the reports he did and his basis for doing so. Given Mr. Brasfield's comparative ignorance on the methodology Mr. Browne employed, the City is simply unable to properly defend against Mr. Brasfield's opinion. Given the circumstances, a deposition of Mr. Browne is appropriate.

In the same way, if the Court were to find that an analysis under the Federal Rules is appropriate, rather than *Shelton*, the City's motion to depose Mr. Browne should still be granted. Under the Federal Rules, a subpoena to mandate a deposition must be quashed when, i*nter alia*, it will result in the disclosure of matter that is privileged or otherwise protected (provided that no exception to or waiver of the protection exists) or when compliance with it would impose an undue burden upon the subpoenaed party. Fed.R.Civ.P. 45(b)(3)(A)(iii), (iv); *Wilson*, 2010 WL 1418401, at *3. The proposed deposition of Mr. Browne is limited in scope – it seeks only the reasoning behind his decision to choose the particular arrest reports he chose as samples to provide to Mr. Brasfield. In other words, this information is limited to the scope and time when Mr. Browne was working in an investigative capacity and not as an counsel to his client. This information is neither privileged nor protected. *Wilson*, 2010 WL 1418401, at *3. Moreover, given the limited nature of the deposition, it would not prevent Mr. Browne from acting fully as a member of Plaintiff's legal team. For the same reason, the deposition would not be an undue burden on Plaintiff given the importance of the information. *Id.* For those reasons, under the Federal Rules of Civil Procedure, the Court should grant the City's Motion to Depose Mr. Browne.

A similar situation occurred in *Ortiz v. City of Chicago, et al.*, 04 C 7423, a case repeatedly referenced by Mr. Brasfield in his deposition. In *Ortiz*, the City was permitted to depose the attorney who calculated the number of individuals arrested by the Chicago Police

Department and who had some type of medical problem.[1] In that deposition, the questioning was limited to the data collection and the underlying methodology. So too here would Mr. Browne's deposition be focused and contained to that same basis.

In the alternative, if the Court is wary of permitting the deposition of Mr. Browne, the City has proposed a set of written Interrogatories, attached as Exhibit C. This is to allow the City to discover information on how Mr. Browne compiled the information he provided to Mr. Brasfield. If Mr. Browne is able to answer each written Interrogatory adequately, the City would have no need to conduct the deposition. This would represent a reasonable compromise and one in which the Court has permitted in the past. *See Fields v. City of Chicago*, 2012 WL 6705419, at *4 (N.D.Ill. Dec. 26, 2012)(Kennelly, J.) (*requiring* the defendant to provide written interrogatory answers prior to plaintiff being allowed to depose opposing counsel). Moreover, given the nature of Mr. Browne's involvement, and Mr. Brasfield's reliance on the investigation, the City respectfully requests the proposed written Interrogatories be answered prior to the deposition of Judy Roberts, who is a retained as an expert to directly rebut Mr. Brasfield's opinions as to the numbers of arrestees with mental health issues.

## CONCLUSION

Given that Mr. Brasfield based one of his opinions solely on Mr. Browne's investigation and computation of data, the City should be permitted to depose Mr. Browne on his methodology. Absent this discovery, the City would be unable to ascertain whether the methodology is sufficient to survive Rule 702 scrutiny. Accordingly, the City's motion to depose Garrett Browne should be granted. In the alternative, Mr. Browne should be directed to answer the City's written Interrogatories adequately and in full, attached as Exhibit "C," prior to the deposition of Judy Roberts so the City is able to properly defend against Mr. Brasfield's opinion.

Respectfully submitted,

By:     */s/ Shawn W. Barnett*
        Shawn W. Barnett
        Assistant Corporation Counsel

City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602

---

[1] The City can provide a copy of this deposition to the Court upon request.

T: (312) 744-9171
F: (312) 744-6566

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that I filed the foregoing with the Clerk of the Northern District of Illinois using the Court's electronic filing system. As a result, electronic copies of the foregoing were served upon all counsel of record.

Respectfully submitted,

By:     */s/ Shawn W. Barnett*
        Shawn W. Barnett
        Assistant Corporation Counsel

City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
T: (312) 744-9171
F: (312) 744-6566