**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PERCY COLEMAN, Administrator** | ) | |
| **of the Estate of Philip Coleman,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12 C 10061** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Percy Coleman, the administrator of the estate of Philip Coleman, has sued the

City of Chicago and a number of Chicago police officers under 42 U.S.C. § 1983 and

state law, claiming that the officers' repeated use of excessive force against Philip

Coleman caused his death. Among other things, plaintiff contends that Officer Keith

Kirkland used excessive force when he dragged Mr. Coleman by the handcuffs along

the floor out of his cell and down a hallway in a police station lockup. Plaintiff also

contends that a supervising officer, Sergeant Tommy Walker, was present but failed to

intervene to stop Officer Kirkland.

Plaintiff has moved for summary judgment on his claims against these

defendants regarding the dragging incident. For the reasons stated below, the Court

concludes that Officer Kirkland is liable for using excessive force and that Sergeant

Walker is liable because he could have and should have prevented Officer Kirkland's

misconduct but failed to do so.

**Facts**

Chicago police officers arrested Philip Coleman for domestic battery on the evening of December 12, 2012 and took him to the 5th District police station. He stayed alone in a holding cell overnight. Defendants contend that the next morning, when it came time for Mr. Coleman to go to court, he verbally refused. There was a physical altercation between several officers and Mr. Coleman inside the cell, during which an officer tasered Mr. Coleman. He was handcuffed and shackled and was then dragged by the handcuffs out of the cell and down a hallway. Later on December 13, Mr. Coleman was taken to Roseland Community Hospital for medical attention. Evidently he was tasered again at the hospital. Mr. Coleman died at the hospital on December 13. He contends that the officers' use of excessive force caused his death.

The incident during which Mr. Coleman was first tasered and then dragged by the handcuffs was captured on two video cameras in the lockup area of the 5th District station. One of the cameras was trained on Coleman's cell and an adjoining cell (which was empty), and the other was trained on a hallway adjacent to the cell. The Court notes that not all of the events inside Coleman's cell can be seen perfectly, largely due to the presence of a "privacy blur" obscuring the area of the cell's toilet.

The key events that took place just outside and inside the cell began and ended in less than three minutes. At 7:26:47 a.m., an officer comes into view approaching the cell, where Mr. Coleman is lying on a bed—more accurately, a platform. A second and third officer follow. At 7:27:05, the third officer appears to address Mr. Coleman, who raises his head, as a fourth officer approaches the cell. At 7:27:14, the fourth officer opens the cell door, and several officers begin to enter the cell—six officers altogether.

2

By 7:27:24, Mr. Coleman has raised himself to a seated position, with his feet on the floor, facing the officers, who are facing him.  The sixth and last officer enters the cell at 7:27:34, and at this point the officers are arranged in a semicircle, facing Mr. Coleman, who is still seated.

There ensues what appears to be conversation between one or more officers and Mr. Coleman (the video recording has no audio track).  At 7:28:05, an officer whose back is to the camera and whose actions are partially obscured by the privacy blur begins to hold up, and perhaps unfold or unfurl, some sort of a white object—perhaps a sheet?  At 7:28:15, Mr. Coleman starts to stand up from the bed.  Just three seconds later, at 7:28:18, he sits back down or falls back to a seated position on the bed.  Two seconds after that, at 7:28:20, Mr. Coleman appears to jerk back and forth—perhaps because he has just been tasered—and an officer near the rear of the cell reaches for Mr. Coleman's shoulders.  By 7:28:22, it is apparent that an officer standing directly in front of Mr. Coleman has tasered him; the extended wires attached to the taser's probes are apparent.

Mr. Coleman is then forced to the floor by four or five officers.  At 7:28:48, the officers begin to get up, with Mr. Coleman still on the floor.  At 7:29:01, an officer, identified as Officer Kirkland, begins to drag Mr. Coleman out of the cell.  At 7:29:05, it becomes apparent that Officer Kirkland is dragging Mr. Coleman by his handcuffs.  Mr. Coleman is motionless while being dragged.  His legs are shackled together at the ankles and are not moving.  At 7:29:09, Mr. Coleman disappears from the view of the camera trained on his cell.

The events are then picked up by a video camera trained on an adjacent hallway.

At 7:29:09, Officer Kirkland starts to backs out of a door into the hallway, dragging Mr. Coleman by the handcuffs. Mr. Coleman becomes visible at 7:29:11. He disappears from that camera's view about 15 seconds later, at 7:29:26. Mr. Coleman is completely motionless while being dragged; he does not struggle at all. The distance in the hallway from the entryway through which Mr. Coleman was dragged to where the camera's field of view ends appears to be 26 paces, as indicated by observation of one of the officers who walks down the hallway (from the doorway until the officer's head disappears from view at the bottom of the screen). So Mr. Coleman was dragged, motionless, at least that far down the hallway.

## Discussion

In his claims against the defendants, plaintiff contends that the officers' use of a taser both in the holding cell and at the hospital constituted excessive force. Those incidents are not before the Court on the present motion for summary judgment. Rather, the motion concerns plaintiff's contention that Officer Kirkland used unreasonable, unjustified force in dragging Mr. Coleman out of the cell and down the hallway and that Sergeant Walker, who was present throughout the incident, is liable for failing to intervene to stop Officer Kirkland from dragging Mr. Coleman. In determining the motion, the Court is not called upon to decide whether and the extent to which the dragging contributed to Mr. Coleman's injuries or death.

## 1.    Liability of Officer Kirkland for dragging Mr. Coleman

The propriety of an officer's use of force against an arrestee or pretrial detainee is governed by an objective reasonableness standard. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The objective reasonableness of an officer's use of force turns

on the facts and circumstances of the particular case. *Id.* It is determined from the perspective of a reasonable police officer on the scene, including what the officer knew at the time. *Id.* Considerations that may bear on the reasonableness or unreasonableness of force used include, among other factors, the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.*

There is no question that Officer Kirkland's dragging of Mr. Coleman along the floor by his handcuffs constituted intentional use of force; defendants do not argue otherwise. It is also plainly apparent from the video that before Officer Kirkland dragged Mr. Coleman by his handcuffs out of his cell and down the hallway, Mr. Coleman was no longer offering resistance. He had been subdued by the use of a taser and other officers' application of force, and he had been restrained by the application of handcuffs and shackles.

It is well established that a police officer may not use significant force on a non-resisting or passively resisting subject. *Abbott v. Sangamon Cty.*, 705 F.3d 706, 732 (7th Cir. 2015). In particular, "police officers cannot continue to use force once a suspect is subdued." *Id.* "This prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014). There is "a commonsense need to mitigate force" when an officer is dealing with a non-resisting suspect, particularly when the suspect is

known to have diminished capacity," *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 526 (7th Cir. 2013), as Mr. Coleman unquestionably did once he had been tasered, taken to the ground, subdued, handcuffed, and shackled.

Once the officers had subdued and restrained Mr. Coleman, they, and in particular Officer Kirkland, had a choice about how to get him out of the cell. Because Mr. Coleman was subdued and restrained, this was, most emphatically, not a situation where things were still evolving or Officer Kirkland had to make a decision on the fly. In opposing summary judgment, defendants rely on the principle that "an officer will not be held liable if the circumstances under which the force was used evolved so rapidly that a reasonable officer would not have had time to recalibrate the reasonable quantum of force." *Abbott*, 705 F.3d at 733; *see* Defs.' Mem. at 7-8. That is not the situation here. Whatever the propriety of the use of a taser and the ensuing efforts to subdue Mr. Coleman, once the officers had his hands cuffed and his legs shackled, he was under control and on the floor. Given those circumstances, there is no viable claim, and no reasonable jury could find, that Officer Kirkland had to make a split-second decision on what to do next. There is no basis for a contention that the officers had no time to "recalibrate" how much force was needed to get Mr. Coleman out of his cell and wherever he had to go next.

No effort was made in this case to temper the use of force in removing Mr. Coleman from the cell. Rather, Officer Kirkland chose to use brute force when it was no longer necessary. Sergeant Walker conceded during his deposition that the officers could have stood Mr. Coleman up and told him to walk. If such an instruction had been given and refused, that might have justified some alternative means of removal from the

cell—such as carrying him—but it is undisputed that no attempt was made to remove Mr. Coleman from the cell in a way that did not require additional force. Defendants contend in their brief that "Coleman could have walked if he wanted to walk but he chose not to walk," Defs.' Mem. at 6, but that is a misstatement of the record— defendants have offered no evidence that Mr. Coleman was given the opportunity to leave the cell under his own power after he was tasered, handcuffed, and shackled.

Defendants note that there is a dispute whether Mr. Coleman was handcuffed with his hands in front of him or behind him. Defs.' Mem. at 6. It appears to the Court that he was handcuffed in front. The dispute, however, is immaterial. The Court assumes for purposes of the present motion that Mr. Coleman was handcuffed behind his back. Even if that is the case, Officer Kirkland unquestionably used excessive force in pulling Mr. Coleman's hands over his head and dragging him from the cell. No reasonable jury could find otherwise.[1]

Defendants contend that there is no evidence, or at least no persuasive evidence, that the dragging caused any injury to Mr. Coleman. Defs.' Mem. at 5, 9. But that is a red herring. Plaintiff is not required to show that Mr. Coleman was harmed by the officer's use of force in order for Officer Kirkland to be liable. *McAllister v. Price*, 615 F.3d 877, 882 (7th Cir. 2010).

Finally, neither Officer Kirkland nor Sergeant Walker offers a defense of qualified immunity, so that is not an issue for the Court to consider.

---

[1] Defendants' own police practices expert agreed that what Officer Kirkland did was inappropriate. See Pl.'s Ex. H (Jeffrey Noble deposition) at 91-93.

**2.      Liability of Sergeant Walker for failure to intervene**

Plaintiff also contends that Sergeant Walker is liable for failing to intervene to stop Officer Kirkland from dragging Mr. Coleman along the floor by his handcuffs.  An officer may be held liable for excessive force under section 1983 for "his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers."  *Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012).  To establish liability on this basis, a plaintiff must show that the officer knew that another officer was using, or was about to use, excessive force on the plaintiff; the officer had a realistic opportunity to do something to stop the use of excessive force; and he failed to take reasonable steps to do so.  *Id.*; *see also, e.g., Miller v. Smith*, 200 F.3d 491, 495 (7th Cir. 2000); *Lanigan v. Vill. of East Hazel Crest*, 110 F.3d 467, 477-78 (7th Cir. 1997).

There is no question that Sergeant Walker is liable on this basis for his failure to stop Officer Kirkland from dragging Mr. Coleman by the handcuffs.  No reasonable jury could find otherwise.  Defendants' only argument to the contrary is that Sergeant Walker "believed the actions of Kirkland were appropriate . . . ."  Defs.' Mem. at 9.  That is beside the point.  Liability for excessive force is based on the objective reasonableness of the force used, not the officers' claimed subjective views about whether it was appropriate.  It is undisputed that Sergeant Walker could have ordered Officer Kirkland not to drag, or to stop dragging Mr. Coleman and that he chose not to do so.  Indeed, Sergeant Walker conceded during his deposition that they could have stood Mr. Coleman up and told him to walk but that neither he nor any other officer did so.  The Court concludes that plaintiff is entitled to summary judgment against Sergeant Walker for his failure to intervene to stop Officer Kirkland from dragging Mr. Coleman.

**Conclusion**

For the reasons stated above, the Court grants plaintiff's motion for partial summary judgment [dkt. no. 153]. Defendant Keith Kirkland is liable to plaintiff under 42 U.S.C. § 1983 for his use of excessive force in dragging Philip Coleman by his handcuffs, and defendant Tommy Walker is likewise liable for excessive force due to his failure to intervene to prevent or stop Officer Kirkland. The issue of damages, including punitive damages, will be determined by the jury at trial.

Date: December 14, 2015

_____
MATTHEW F. KENNELLY
United States District Judge