IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Percy Coleman, Administrator for the Estate of Philip Coleman, | ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 10061 |
| v. | ) ) | HON. MATTHEW F. KENNELLY Judge Presiding |
| The City of Chicago, Chicago Police Lieutenants Michael Rigoli, Star No. 235, Carlos Mostek, Star No. 196, and Michael Casey, Star No. 191, Chicago Police Sergeants Sean Tully, Star No. 1090, William Meador, Star No. 1003, and Tommy Walker, Star No.2328, and Chicago Police Officers Cordy Fouch, Star No. 19814, Mark Jones, Star No. 10390, David Montgomery, Star No. 10651, Brian Hood, Star No. 10598, Reginald T. Malone, Star No. 17484, Detention Aide Keith Kirkland, Lee Caldwell, Star No. 16925, and Charita Edwards, Star No. 10095, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MAGISTRATE FINNEGAN |
| Defendants. | ) ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO MODIFY AGREED QUALIFIED HIPAA AND MHDDCA PROTECTIVE AND CONFIDENTIALITY ORDERS**

Defendant City of Chicago ("City"), by and through its attorney, Edward N. Siskel, Corporation Counsel of the City, moves this Honorable Court to modify the Agreed Qualified HIPAA and MHDDCA Protective Order and Confidentiality Order (collectively, "Orders") to allow the City to reproduce materials covered under the Orders for the purpose of proceeding with the disciplinary process against any and all current or former employees of the Chicago Police Department ("CPD"), including, but not limited to, Detention Aide Keith Kirkland

("Kirkland") and Sergeant Sean Tully ("Tully"). In support of this motion, the City states the following:

1. On September 9, 2013, this Court entered a Confidentiality Order in this matter limiting the dissemination of "Confidential Information," which included "medical information concerning any individual," in addition to "medical or other information that is of a sensitive or non-public nature regarding plaintiff, defendants, non-party witnesses, and non-party employees of the City of Chicago . . . ." Confidentiality Order at 2, attached as Exhibit ("Exh.") 1.

2. On February 12, 2014, this Court entered an Agreed Qualified HIPAA and MHDDCA Protective Order ("Protective Order"), limiting the dissemination of protected health information ("PHI") under the "Health Insurance Portability and Accountability Act of 1996, codified primarily at 18, 26 and 42 U.S.C. (2002)" ("HIPAA") and mental health records and communications under the "Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/1-17," ("MHDDCA.") Protective Order at 1-2, attached as Exh. 2.

3. Pursuant to the terms of the Protective Order, regarding Philip Coleman, "[t]he Parties agree not to use or disclose the PHI, Mental Health Communication, or Mental Health Record released in this proceeding <u>for any other purpose or in any other proceeding</u>." (Emphasis supplied.) Exh. 2 at 3.

4. On December 14, 2015, this Court entered a Memorandum Opinion and Order granting plaintiff's motion summary judgment where at issue was whether Kirkland "used excessive force when he dragged Mr. Coleman by the handcuffs along the floor out of his cell and down a hallway in a police station lockup." Memorandum Opinion and Order at 1, attached as Exh. 3. When granting summary judgment in plaintiff's favor, this Court ruled that "Kirkland

unquestionably used excessive force in pulling Mr. Coleman's hands over his head and dragging him from the cell. No reasonable jury could find otherwise." Exh. 3 at 7.

5. Based upon the treatment Philip Coleman received while in police custody, the City has initiated disciplinary proceedings against CPD employees, including Kirkland and Tully, who were individually named defendants in this matter.

6. Section 7.1(c) of the City of Chicago Agreement with Public Safety Employees Union Unit II ("Unit II Contract"), which governs the terms and conditions Kirkland's employment with the City, provides the following in relevant part:

> For discipline other than oral warnings, the employee's immediate supervisor or his/her designee shall meet with the employee and notify him/her of the accusations against the employee and give the employee an opportunity to answer said accusations. Specifically, the supervisor or his/her designee shall tell the employee the names of witnesses, if any, and <u>make available copies of pertinent documents the employee or Union is legally entitled to receive</u>, to the extent then known and available.

(Emphasis supplied.) Unit II Contract at 10-11, excerpts attached as Exh. 4.

7. Section 9.3(D) of the Agreement Between the City of Chicago and the Policemen's Benevolent & Protective Association of Illinois, Unit 156-Sergeants ("Unit 156 Contract"), which governs the terms and conditions of Tully's employment with the City, provides the following in relevant part:

> In all discipline cases, <u>Complaint Register files shall be provided to Unit 156-Sergeants within fourteen (14) days</u> of a request for such files (unless exigent circumstances exists) by Unit 156-Sergeants or Unit 156-Sergeants representatives who are sworn members of the [Chicago Police] Department . . . .

(Emphasis supplied.) Unit 156 Contract at 15, excerpts attached as Exh. 5.

8. Pursuant to these provisions contained in the Unit II Contract and Unit 156 Contract, the City is obligated to produce Complaint Register ("CR") No. 1078329, which is the

file generated to investigate possible misconduct by various CPD employees, including Kirkland and Tully, who interacted with Philip Coleman while he was in police custody shortly before his death. CR No. 1078329 contains deposition transcripts and other documents protected from disclosure under the Orders.

9. The City has sought, and received, an Authorization for Release of Documents executed by Percy Coleman, the Administrator for the Estate of Philip Coleman, wherein he authorizes:

> the release of any and all documents covered by the 'Confidentiality Order' and the 'Agreed Qualified HIPAA and MHDDCA Protective Order' entered in the case of Percy Coleman, Administrator for the Estate of Philip Coleman v. City of Chicago, et al., 12 CV 10061, on September 9, 2013, and February 12, 2014, respectively, for use in any and all phases of the disciplinary process, including the investigation into potential misconduct, the preparation and service of disciplinary charges, the presentation of evidence at administrative hearings and/or arbitrations, and any corresponding appeals, involving any and all current or former employees of the Chicago Police Department.

Authorization for Release of Documents executed by Percy Coleman, attached as Exh. 6.

10. Prior to filing this motion, the City asked counsel for the individually named defendants, who include Kirkland and Tully, if they would agree to the filing of an agreed motion to amend the Orders to allow the use of confidential materials covered by the Orders, including CR No. 1078329, to be used in the disciplinary proceedings against them. Counsel for Kirkland and Tully stated that they would be objecting to this motion.

11. When determining whether to modify a protective order, it is appropriate for a court to consider four factors: (1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and (4) whether good cause exists for the modification. See Murata Manufacturing, Co., Ltd. v.

Bel Fuse, Inc., 234 F.R.D. 175, 179 (N.D. Ill. 2006), citing Bayer AG and Miles, Inc. v. Barr Laboratories, Inc., 162 F.R.D. 456, 462-63 (S.D.N.Y. 1995).

12. Regarding the nature of the Orders, the clear and primary purpose behind the entry of these documents was the protection of Philip Coleman's PHI, including both his physical and mental health condition while in police custody immediately prior to his death, from disclosure. Clearly, the party most affected by the release of this information to the individually named defendants and their representatives for possible use in the disciplinary process involving CPD members is Philip Coleman's family, who have given their consent to releasing the protected documents. See Exh. 6.

13. Regarding foreseeability at the time of issuance, when the Orders were entered, none of the individually named defendants in the case at bar were under investigation and subject to potential discipline. The summary report prepared as part of CR No. 1058981, which was initiated on December 13, 2012, the day Philip Coleman died, and closed on November 25, 2014, which was after this Court entered the Orders, expressly states that "there are no allegations of police misconduct or maltreatment of Mr. Coleman. . . . [T]he R/I [Reporting Investigator] recommends that this investigation be closed and that no Department member address any allegations of misconduct." CR No. 1058981 summary report, excerpt attached as Exh. 7.

14. On December 5, 2015, more than a year after CR No. 1058981 was closed, CR No. 1078329 was initiated. CR No. 1078329 summary report, excerpt attached as Exh. 8. The purpose of initiating CR No. 1078329 was to conduct "a new investigation into what took place during Mr. Coleman's time in police custody to address allegations that the force the officers used on Mr. Coleman was excessive, and that Department members did not provide Mr. Coleman with access to medical and/or mental health treatment." Exh. 8. The summary report

5

for CR No. 1078329 expressly states that the allegations under investigation were taken in part from "civil suit 12 CV 10061, which was filed by Mr. Coleman's family." Exh. 8. Because no members of the CPD were under investigation at the time the Orders were entered, it was not foreseeable that any of the individually named defendants would be subject to discipline, which is the basis for this motion.

15. Regarding the parties' reliance, as previously stated, the party with the greatest stake in maintaining the privacy of Philip Coleman's medical and psychological information is his family, which has agreed to release the documents for use in disciplinary proceedings against the individually named defendants. The individually named defendants, however, have no basis for relying on the terms of the Orders as a justification for opposing modification of the Orders, aside from attempting to circumvent the disciplinary process.

16. Finally, regarding the fourth and final factor, the determination as to whether good cause exists to amend a protective order rests with the district court. See Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 946 (7th Cir. 1999). As required under the collective bargaining agreements governing the terms and conditions of employment for CPD members, as part of the disciplinary process, the City is obligated to produce CR No. 1078329. See Exhs. 4 and 5. Amending a protective order for the purpose of pursuing discipline is sufficient to establish just cause. See Finazzo v. Hawaiian Airlines, 2008 WL 678562 at 2 (U.S.D.C. D. Hawaii Mar. 12, 2008) (finding a "compelling need to modify the Protective Order," so that the defendant could "use and disclose the [plaintiff's] health information . . . to operate its business, investigate misconduct, and discipline employees in a consistent manner in accordance with its company policies and labor agreements").

17. No substantive changes to the Orders other than allowing the City to disclose and use the materials covered by the Orders in the manner agreed to in the Authorization for Release of Documents executed by Percy Coleman is requested.

18. Prior to producing CR No. 1078329 to the individually named defendants, their unions, their representatives, and/or their attorneys for the purpose of pursuing discipline against the individually named defendants, the City will require that all parties receiving CR No. 1078329 agree not to further reproduce the documents.

**WHEREFORE**, Defendant City respectfully requests that this Honorable Court grant its Motion to Modify this Court's Agreed Qualified HIPAA and MHDDCA Protective and Confidentiality Orders (Docket Nos. 73 and 44, respectively) ("Orders") and enter an order *nunc pro tunc* to any and all phases of the disciplinary process in this matter to allow the City to reproduce materials covered under the Orders for the purpose of proceeding with such disciplinary process against any and all current or former employees of the Chicago Police Department, including, but not limited to, Detention Aide Keith Kirkland and Sergeant Sean Tully.

    Respectfully submitted,

    EDWARD N. SISKEL
    Corporation Counsel

By: */s/ Jonathan Clark Green*
    JONATHAN CLARK GREEN
    Senior Counsel

30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-0226 (Phone)
(312) 744-6566 (Fax)
Attorney No. 6193934